UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LAURA C. FERGUSON,

        Plaintiff,                        Civil No. 08-473-HA

        v.                              OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

HAGGERTY, District Judge:

      Plaintiff brings this action requesting judicial review of a decision by the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. She seeks an order reversing the Commissioner's decision and remanding this case for an award of benefits. For the following reasons, this court concludes that the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff's application for benefits is affirmed.

**ADMINISTRATIVE HISTORY**

1  - OPINION AND ORDER

Following a remand of her initial claim, plaintiff advances a second claim under 42 U.S.C. § 405(g) for judicial review of the decision denying her claim for Social Security disability. She initially filed an application for DIB on September 20, 2002, alleging disability beginning on August 2007. Tr. 56.[1] This application was denied initially and upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ). After an unsuccessful appeal to the SSA Appeals Council, plaintiff sought judicial review, and obtained a remand for further proceedings. A second hearing before an ALJ was held on September 2, 2004. The ensuing decision, issued on January 31, 2008, denied plaintiff's application again. After the Appeals Council denied plaintiff's request for review, the ALJ's conclusions became the Commissioner's final decision. This suit followed.

**FACTUAL BACKGROUND**

Plaintiff was born in 1942. Tr. 56. She was fifty-nine years old at the time of her August 2002 alleged disability onset date, and she was sixty-five years old when the ALJ issued the second denial in January 2008. Ferguson has earned a general equivalency diploma and worked as an administrative assistant from 1993 to September 2002. Tr. 684, 698. During this period, she mostly worked forty-hour work weeks, Tr. 66, 69, but sometimes worked an average of forty-two hours per week by alternating between completing three twelve-hour days in one week and four twelve-hour days in the next week. Tr. 69, 542-44. She did clerical work in June 2004. Tr. 515, 684.

There is no dispute that plaintiff is severely impaired because of lumbar degenerative

---

1   Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2  - OPINION AND ORDER

changes and osteopenia, cervical disc changes with discectomy and fusion surgery, myalgias/arthralgias of the right shoulder and right lower extremity and hip, obesity, a history of hypercoagulability disorder, and diabetes with peripheral neuropathy. *See* Dft.'s Brief at 5 (citing Tr. 598); *see also* Pl.'s Opening Brief at 2-3. Other details of plaintiff's medical history will be reviewed as necessary in this ruling's analysis.

## **STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §404.1520(a). If the claimant lacks such impairments, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1

("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's Residual Functional Capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all the claimant's impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) and Social Security Ruling (SSR) 96-8p.

Upon the establishment of the claimant's RFC, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience.  *Hoopai*, 499 F.3d at 1074-75 (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act.  *See* 20 C.F.R. § 404.1520(f)(1).  If the

Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).

This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).

The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted).

A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Benton*, 331 F.3d at 1035.

## SUMMARY OF THE ALJ'S FINDINGS

At step one, the ALJ found that plaintiff performed SGA through May 25, 2003, but not after that date. Tr. 597. The ALJ then found that plaintiff suffered from lumbar degenerative changes, osteopenia, cervical disc changes with discectomy and fusion surgery, myalgias/arthralgias of her right shoulder and right lower extremity and hip, obesity, and also presented a history of hypercoagulability disorder, and diabetes with peripheral neuropathy. Tr. 598. However, these impairments did not meet or equal the requirements of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 598.

The ALJ went on to determine plaintiff's RFC. Plaintiff can sit for six hours of an eight-hour day, changing positions after thirty minutes and elevating her feet for fifteen minutes every two hours; she can stand for four hours out of an eight-hour day (changing positions every fifteen minutes); she can walk one block; she can lift and carry twenty pounds occasionally and ten pounds frequently; she can frequently perform fine and gross manipulation; she can rarely bend, crawl, kneel, crouch, and climb stairs; she can occasionally stoop; she can talk face-to-face without difficulty, but must limit telephone contact to five minutes because of her hoarse voice; she must avoid dangerous environments, vibration, unprotected heights, ladders, ropes, and scaffolds; and she cannot move her neck to extremes, but could occasionally look up and down and could, without difficulty, look out when working at a desk. Tr. 598.

At step four, the ALJ found that plaintiff could perform her past relevant work as an administrative assistant as she actually performed it. Tr. 603. Accordingly, the ALJ found that plaintiff was not disabled. As noted above, this conclusion became the Commissioner's final decision when the Appeals Council declined review.

6  - OPINION AND ORDER

**QUESTION PRESENTED**

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits.  Specifically, plaintiff alleges that the ALJ improperly (1) concluded that she could return to her work as performed, (2) rejected medical evidence, and (3) rejected plaintiff's testimony about her symptoms.

**DISCUSSION**

    **1.**    **The ALJ's finding that plaintiff could return to past work**

Plaintiff first complains that the ALJ erred in concluding that plaintiff could perform her past relevant work.  In so concluding, the ALJ referred specifically to testimony given by a vocational expert (VE):

> The [VE] testified that given the claimant's [RFC], she is capable of performing her past relevant work as she performed it.  In comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed.

Tr. 603.

A vocational expert may offer testimony on whether a claimant with certain physical and mental limitations can perform past relevant work as it was actually performed or as it is generally performed in the national economy.  20 C.F.R. § 404.1560(b)(2).  Plaintiff's argument here pertains to her assessed RFC.  The SSA construes a claimant's RFC as the most a claimant can do on a regular and continuing basis, defined as an eight-hour workday for five days a week, or an "equivalent work schedule."  Social Security Ruling (SSR) 96-8p.

The ALJ's finding regarding plaintiff's capacity to perform past relevant work is supported by substantial evidence and is not undermined in any material way by the fact that plaintiff sometimes worked longer days and averaged forty-two hour workweeks.  Plaintiff's

7  - OPINION AND ORDER

arguments are also rejected because there is insufficient evidence establishing that the past relevant work *required* twelve-hour workdays and forty-two hour workweeks.  The VE's questioning and the responsive testimony were proper and adequately support the ALJ's conclusions.

Plaintiff's alternative argument that the past relevant work as an administrative assistant should be construed as light work, beyond her RFC, is also rejected.  Plaintiff relies upon VE testimony elicited at her first ALJ hearing in 2004, at which a VE described plaintiff's work as an administrative assistant as a "light exertion level" occupation.  Tr. 568.

However, at plaintiff's second hearing in 2007, another VE identified her work as an administrative assistant as a sedentary occupation.  Tr. 698.  This classification is supported by substantial evidence and by plaintiff's descriptions of the work she performed, and the ALJ did not err in accepting the second VE's testimony and concluding that plaintiff could perform her past sedentary work as an administrative assistant.

   **2.    The ALJ's analysis of medical evidence**

Plaintiff next argues that the ALJ erred by rejecting certain medical opinions.  An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject the uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert

opinions); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing physician's conclusions. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Lester*, 81 F.3d at 830; *see also Carmickle v. Comm'r.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (opinions from doctors with the most significant clinical relationship with the claimant are generally entitled to more weight than opinions from doctors with lesser relationships).

Moreover, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422). Although a treating physician's opinion "is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). An ALJ may discredit the opinions of a treating physician that are unsupported by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion largely based on a claimant's discredited subjective complaints or presenting inconsistencies between the opinion and the medical record or a claimant's daily activities).

Plaintiff first argues that the ALJ failed to adopt the limitation recognized by Dr. Tatsuro Ogisu regarding plaintiff's cane use. After examining plaintiff in March 2007, the doctor reported that an "assistive device is not absolutely required for ambulation, but the use of [plaintiff's] cane is appropriate when venturing outside the home." Tr. 678. Doctor Ogisu also noted a rotational "cervical range of motion" of "55 bilaterally." Tr. 676.

The ALJ omitted cane use when assessing plaintiff's RFC, and adopted a less restrictive limitation regarding plaintiff's cervical range of motion, noting that plaintiff "cannot move her neck to the extremes . . . but can occasionally look up and down and can, without difficulty, look out . . . ." Tr. 598. These findings are consistent with Dr. Ogisu's report, and this court concludes that the ALJ did not err by electing not to reference plaintiff's appropriate, but optional, use of a cane. *See* SSR 96-9p. Moreover, the ALJ did not err in incorporating a cervical range of motion limitation (plaintiff cannot turn her nose to her shoulder on either side, Tr. 598). Although that limitation differed from a brief reference to some motion restriction made in Dr. Ogisu's report, Dr. Ogisu omitted any cervical rotation limitations in his summary of her functional limitations.

Plaintiff also contends that the ALJ erred in giving insufficient weight to her treating physician's opinions of her limitations. Doctor Richard K. Apau opined in August 2004 that plaintiff could not work due to physical and mental impairments. Tr. 432-34. In June 2007, Dr. Apau reiterated this opinion and wrote that plaintiff "suffers from numerous medical conditions that led me to believe that she was unable to enage in any permanent employment." Tr. 637.

Plaintiff complains that the ALJ gave little weight to Dr. Apau's opinion simply because the opinion is inconsistent with treatment records. Plaintiff asserts that the treatment records

10 - OPINION AND ORDER

support Dr. Apau's views because the records reflect plaintiff's diminished sensation and strength, increased radicular symptoms with tingling, and numbness in her right hand.

The ALJ's evaluations of the medical opinions was thorough and supported by substantial evidence. These evaluations were made because the medical evidence and treatment records failed to support Dr. Apau's opinions but did support Dr. Ogisu's opinions, which contradicted Dr. Apau. Tr. 602.

Doctor Ogisu 's opinions were well-supported by the medical evidence of record, and properly constituted substantial evidence that was consistent with, and supported by, other evidence of record. *See Tonapetyan*, 242 F.3d at 1149 (non-examining doctor's opinion constituted substantial evidence favoring rejection of treating doctor's opinion, when the former rested his opinion on the objective findings of an examining physician); *Andrews*, 53 F.3d at 1041 (if the opinion of a claimant's treating physician is contradicted, and the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence).

As reviewed above, the ALJ performed a thorough analysis of the medical evidence, and the resolution of conflicts among medical opinions was proper. The weight attributed to the evaluations of Dr. Apau was proper in light of the lack of support in the medical records, and the compelling nature of Dr. Ogisu's reports. *See Tonapetyan*, 242 F.3d at 1149; *see also Tommasetti*, 533 F.3d at 1041.

### 3. The ALJ's evaluation of plaintiff's testimony

Plaintiff asserts that the ALJ assessed her testimony improperly. An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See*

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Instead, a two step analysis applies at the administrative level when considering a claimant's subjective credibility. At step one, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom," and "if the the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-84 (9th Cir. 1996); s*ee also* SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

When determining a claimant's credibility, the ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation (such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) and inadequately explained failures to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider conflicting medical evidence, effective medical treatment, inconsistent statements, daily activities inconsistent with the alleged symptoms, and testimony that is vague or less than candid. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039-40 (9th Cir. 2007); *see also Light v. Commissioner*, 119 F.3d 789, 792 (9th Cir. 1997) (the ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms).

12 - OPINION AND ORDER

A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F. R.§§ 404.1529(c)(2); 416. 929(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Here, no substantive evidence of malingering was presented. The ALJ instead gave proper reasons to reject some of plaintiff's testimony. The ALJ noted that medication effectively treated her deep vein thrombosis and neuropathy pain, and that Dr. Ogisu found she had good manual dexterity and could do sedentary-to-light work in contradiction to her claim that she was limited in her capacity to reach. Tr. 601. These reasons were sufficient to support the ALJ's adverse credibility finding.

## CONCLUSION

The record of this case and each of plaintiff's arguments has been reviewed fully. This court concludes that the decision of the Commissioner is based upon the correct legal standards and is supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Laura C. Ferguson's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this   10    day of August, 2009.

                                    /s/ ANCER L. HAGGERTY  
                                    ANCER L. HAGGERTY  
                                    United States District Judge